UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

| | |
|---|---|
| JONIE SHIRES ) | |
| ) | |
| v. ) | NO: 2:05-CV-84 |
| ) | |
| JOSH KING, *ET AL.* ) | |

## **MEMORANDUM OPINION AND ORDER**

Before the Court is the plaintiff's motion for partial summary judgment and the motion for summary judgment filed by defendants Josh King ("King") and Bristol Motor Speedway, Inc. ("BMS"). [Docs. 65 and 71]. These motions deal with the assertion by all defendants that they are entitled to tort immunity under the Tennessee Workers' Compensation Act. *Tenn. Code Ann.* § 50-6-108. The issue before the Court is whether the defendants qualify as "statutory employers" pursuant to *Tenn. Code Ann.* § 50-6-113 as to the plaintiff, whereby the defendants would have been liable for workers' compensation benefits had the plaintiff's employer been uninsured, thereby entitling them to the corresponding tort immunity provided by the Tennessee Workers' Compensation Act.

On March 28, 2004, the plaintiff, Jonie Shires ("Shires") was on the

grounds of BMS as an employee of Levy PremiumFood Service, L.P., ("Levy"). Levy is in the business of operating restaurants and sports and entertainment related food operations. Levy has contracted with BMS to provide food services in its luxury suites and the "hospitality village." Levy's contract also purports to provide it with the authority to provide other general food concessions but Levy has not exercised this right.

On March 28, 2004, Shires was involved in shutting down Levy's operations for the day. The defendants, Manfred Wiedemann ("Wiedermann"), an employee of Stowers Rental and Supply, Inc. ("Stowers"), and King, a BMS employee, were maneuvering an industrial generator, with the help of a forklift, adjacent to a Levy tent where Shires was working. Stowers is a company from which BMS rents industrial generators and other machinery for race events.

Plaintiff alleges that through the negligent actions of Wiedemann and King, a tent pole fell, striking Shires in the head. The plaintiff has received and continues to receive workers' compensation benefits from her employer, Levy. Both BMS and Stowers, as well as Wiedemann and King, have invoked the statutory employer immunity of *Tenn. Code Ann*. § 50-6-113. Thus, the issue before the Court is whether the defendants constitute "statutory employers" of the plaintiff.

Summary judgment is appropriate when "there is no genuine issue of material fact." Fed.R.Civ.P. 56(c). The moving party bears the initial burden of proving that no material facts exist, and the court must draw all inferences in a light most favorable to the non-moving party. A court may grant summary judgment when the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. Once the moving party has proved that no material facts exist, the non-moving party must do more than raise a metaphysical or conjectural doubt about issues requiring resolution at trial. *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir.1992) (citations omitted).

In accordance with long standing summary judgment principles, this Court must construe the evidence in this record most favorably for the plaintiff because she is the litigant opposing summary judgment. *E.g., Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88(1986); *Scott v. Clay County*, 205 F.3d 867, 871 (6th Cir.2000). As explained by the Sixth Circuit in *Scott*,

> "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.... <u>The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor</u>." *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citation omitted). See also *Eastman Kodak v. Image Technical Services*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Adams v. Metiva*, 31 F.3d 375, 378-79 (6th Cir.1994).

(emphasis added)

*Id*. at 871.

*Tenn. Code Ann*. § 50-6-113 expanded the responsibility for paying workers' compensation benefits to certain principal and intermediate contractors and subcontractors, who have become known through the cases interpreting the statute as "statutory employers." Where a principal and intermediate contractor or subcontractor might potentially be subject to liability for workers' compensation benefits, that entity is also entitled to the corresponding immunity in tort traditionally reserved to employers. *See Tenn. Code Ann.* § 50-6-108.

There are two different situations pursuant to which an entity will be considered a principal contractor for purposes of the act, and therefore considered the "statutory employer" of a subcontractor's employee.

> A company or other business is considered a principal contractor if the work being performed by a subcontractor's employees is part of the regular business of the company or is the same type of work usually performed by the company's employees. *See Barber v. Ralston Purina*, 825 S.W. 2d 96, 99 (Tenn. Ct. App. 1991) . . . However even if a company contracts out work other than the type of work usually performed by its employees, a company may nevertheless be considered a principal contractor based on the right of control over the conduct of the work and over the employees of the subcontractor. *See Barber*, 825 S.W. 2d at 99; *See also Brown*, 844 S.W. at 137; *Acklie*, 785 S.W. 2d at 357-58; *Stratton*, 695 S.W. 2d at 952. We emphasize that the

> control test is satisfied if the proof demonstrates that the alleged employer had the right to control, regardless of whether this right was actually exercised. *Galloway v. Memphis Drum Serv.*, 822, S.W. 2d 584, 586 (Tenn. 1991); *Carver v. Sparta Elec. Sys.*, 690 S.W. 2d 218, 220 (Tenn. 1985); *Wooten Transports, Inc. v. Hunter*, 535 S.W. 2d 858 (Tenn. 1976).

*Murray v. Goodyear Tire & Rubber Co.*, 46 S.W. 3d 171, 175 (Tenn. 2001).

Thus, in order to establish that BMS is a statutory employer the Court must find either that the work performed by Levy's employees was part of the regular business of BMS or was the same type of work usually performed by BMS's employees, or that BMS had a right of control over the conduct of the work and over the employees of Levy.

The Court agrees with BMS that the instant case is similar to *Randolf v. Eastman Chemical Co.*, 180 S.W. 3d 552 (Tenn. Ct. App. 2005). In *Randolf*, Eastman Chemical Company contracted with TesTex to perform non-destructive electromagnetic testing on heat exchangers in Eastman's Kingsport facility. Although Eastman did not have the technology to conduct the testing itself, Eastman required that the testing be done on a routine basis. Every two years the facility would shut down for around 20 days during which the testing would be performed. Often, planning for the next shutdown would start immediately upon the completion of a prior shutdown. Randolph, an employee of TesTex, was on

5

Eastman's premises to do the contracted work when he was struck in the head by an elevator door.

The court recognized that if Eastman's contract with TesTex was viewed in isolation, the argument that Eastman was not Randolph's statutory employer was appealing. For example, Eastman did not possess the technology to perform the testing and it could be argued that the testing could not be considered work usually performed by Eastman employees. The court further recognized that the situation would be different had Eastman simply decided that it was a good idea to conduct the testing and then entered into a contract with TesTex to perform the testing at a time Eastman was not in one of its shutdowns.

However, viewing the entire picture, the court concluded that because the testing was part of the planned biannual shutdown of Eastman's plant, Eastman was "undoubtedly the principal contractor on this project." *Id*. at 560. The court concluded that:

> "the testing and/or inspecting accomplished by TesTex was part of the regular business of Eastman and the same type of work (*i.e.*, testing, inspecting, etc.) performed by Eastman employees. This result is not changed simply because Eastman did not have the technology to perform non-destructive electromagnetic testing and was required to contract with another company in order to accomplish this one of eight hundred particular jobs being completed during the twenty day shutdown.

*Id.*

The plaintiff urges this Court to find that the food services provided by Levy were not part of the regular business of BMS. The plaintiff argues that BMS is in the business of motor racing, not food services. The Court believes that the plaintiff oversimplifies BMS's business. In fact, BMS is in the entertainment business, that is, providing entertainment in a motor sports venue. No doubt, the provision of food as part of the entertainment of its customers is part of BMS's business. That the provision of these food services are integral to BMS's business is highlighted by the fact that BMS owns its own kitchen facilities, appliances and other equipment which are utilized by Levy in its provision of providing food services. Levy is not the first to use these kitchen facilities and equipment, the facilities and equipment having been previously used by BMS's sister corporation, Finish Line Events, which previously performed the work now performed by Levy.

Thus, it is clear to this Court that Levy's services were part of the regular business of BMS. Therefore, BMS is the principal contractor of Levy, and the statutory employer of the plaintiff. Accordingly, the plaintiff's claims against BMS are barred by the exclusive remedy provisions of the Tennessee Workers' Compensation Act.

It is well settled Tennessee law that a co-employee, acting within the course of his employment, shares the employer's immunity from suit for workplace

injuries. *Taylor v. Linville*, 656 S.W. 2d 368, 370 (Tenn. 1983). While the Tennessee Supreme Court has not addressed the issue of whether the employee of a statutory employer shares his employer's immunity from suit for his on the job negligence, this Court believes that any other conclusion would be nonsensical. Additionally, it does not appear from the plaintiff's pleadings that she makes any allegation that Josh King should be personally liable for his negligence if his employer, BMS, is found to be a statutory employer. Accordingly, Josh King's motion for summary judgment will be GRANTED.

Stowers and Wiedemann, on the other hand, do not allege that Levy's services were part of its regular business or constitute work normally performed by Stower's employees, nor does it contend that it had any right of control over Levy's employees. Rather, Stowers and it employee, Wiedemann, make the rather strained argument that Stowers was involved in a joint venture with BMS, and should thereby share in BMS's immunity from this negligence action as a statutory employer. Stowers provides no authority for its proposition that a joint venture is relevant to the statutory employer issue and fails to address any of the factors for establishing that it is the statutory employer of the plaintiff. Absent any showing that Stowers could potentially be the statutory employer of the plaintiff, as opposed to simply a subcontractor like Levy, providing services to BMS, Stowers does not

stand in the position where it could ever face the potential for paying workers' compensation benefits to an employee of Levy. Absent the potential for paying workers' compensation benefits, Stowers and its employee, Wiedemann, are not entitled to claim immunity in tort under the Tennessee Workers' Compensation Act.

For the foregoing reasons, the plaintiff's motion for summary judgment will be **GRANTED** as to Stowers and Manfred Wiedemann, **DENIED** as to BMS and Josh King, and the motion for summary judgment of BMS and Josh King will be **GRANTED**.

**SO ORDERED**.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE